## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - x
                :

In re:               :    Chapter 11
                :

BNA SUBSIDIARIES, LLC[1]  :    Case No. 10-___ (___)
                :
                :

         Debtor.   :
- - - - - - - - - - - - - - x

**MOTION FOR INTERIM AND FINAL ORDERS (I) AUTHORIZING
DEBTOR TO OBTAIN POSTPETITION FINANCING PURSUANT
TO 11 U.S.C. §§ 105, 361, 362, 363, 364(c)(1), 364(c)(2),
AND 364(c)(3) AND (II) SCHEDULING FINAL
HEARING PURSUANT TO BANKRUPTCY RULE 4001(C)**

The debtor and debtor in possession in the above-
captioned case (the "Debtor"), hereby moves (the "Motion") this
Court for entry of an order pursuant to sections 105, 361, 362,
363, 364(c)(1), 364(c)(2) and 364(c)(3) of title 11 of the
United States Code (the "Bankruptcy Code"), Rule 4001(c) of the
Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules")
and Rule 4001-2 of the Local Rules of Bankruptcy Practice and
Procedures of the United States Bankruptcy Court for the
District of Delaware (the "Local Rules") (I) authorizing the
Debtor to obtain postpetition financing pursuant to Bankruptcy
Code sections 105, 361, 362, 363, 364(c)(1), 364(c)(2) and
364(c)(3), and (II) scheduling a final hearing on the Motion.

---

[1]    The last four digits of the Debtor's federal tax identification number
are 5412.

In support of the Motion, the Debtor relies upon and incorporates by reference the Declaration of Bradford Smith, Chief Operating Officer, of BNA Subsidiaries, LLC, in Support of Chapter 11 Petition and First Day Pleadings (the "Smith Declaration"), filed with the Court concurrently herewith. In further support of the Motion, the Debtor respectfully represents:

## JURISDICTION AND VENUE

1.    This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue of these cases and this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

2.    The statutory predicates for the relief requested herein are sections 105, 361, 362, 363 and 364 of the Bankruptcy Code, Bankruptcy Rule 4001 and Local Rule 4001-2.

## BACKGROUND

3.    On the date hereof (the "Petition Date"), the Debtor filed a voluntary petition in this Court for relief under chapter 11 of the Bankruptcy Code. The factual background regarding the Debtor, including its business operations, its capital and debt structure, and the events leading to the filing of this bankruptcy case, is set forth in detail in the Smith

40000/0597-7012063v3

Declaration, filed concurrently herewith and fully incorporated herein by reference.[2]

4. The Debtor continues to manage and operate its business as a debtor in possession pursuant to Bankruptcy Code sections 1107 and 1108.

5. No trustee or examiner has been appointed in this chapter 11 case, and no committees have yet been appointed or designated.

## A. Prepetition Capital Structure

6. The Debtor's capital structure consists of unsecured debt owed to The Bureau of National Affairs, Inc. ("BNA" or the "DIP Lender"), the Debtor's parent, and other parties. The Debtor has no secured debt.

**RELIEF REQUESTED**

7. By this Motion, the Debtor requests entry of interim and final orders authorizing the Debtor to:

(a) obtain postpetition financing described in the term sheet attached hereto as Exhibit A (the "DIP Facility") up to the aggregate principal amount of $1.5 million from BNA, with such DIP Facility:

(i) having priority, pursuant to section 364(c)(1) of the Bankruptcy Code, over any and all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code,

(ii) being secured, pursuant to section 364(c)(2) of the Bankruptcy Code, by perfected first priority

---

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Smith Declaration.

40000/0597-7012063v3

security interests in and liens upon all unencumbered pre-petition and post-petition property of the Debtor including, but not limited to, cash collateral, inventory, accounts receivable, other rights to payment whether arising before or after the date of the filing of the petition herein (the "Petition Date"), property, plant, equipment, general intangibles, instruments, interests in leaseholds, real property, patents, copyrights, trademarks, trade names, other intellectual property and the proceeds of all the foregoing, but excluding all of the Debtor's rights in and to claims and causes of action under sections 502(d), 544, 545, 547, 548, 550 or 551 of the Bankruptcy Code (collectively, the "Avoidance Actions"),

(iii)     being secured, pursuant to section 364(c)(3) of the Bankruptcy Code, by perfected junior security interests in and liens upon all prepetition and post-petition property of the Debtor that is subject to a Permitted Lien (as defined below)(all of the foregoing property specified in clauses (i), (ii), (iii) and (iv) above being hereinafter collectively referred to in this Order as the "Collateral"); and

(iv) being subordinate to the Carve-Out Expenses.

(b)  schedule, pursuant to Bankruptcy Rule 4001, an interim hearing (the "Interim Hearing") on the Motion for this Court to consider entry of an interim order annexed to this Motion (the "Interim Order") authorizing the Debtor, on an interim basis, to forthwith borrow $400,000 and

(c)  schedule, pursuant to Bankruptcy Rule 4001, within 30 days of the entry of the Interim Order, a final hearing (the "Final Hearing") for this Court to consider entry of a final order authorizing the balance of the DIP Facility on a final basis, as set forth in this Motion and the term sheet attached to this Motion.

### BASIS FOR RELIEF

8.  The Debtor does not have sufficient available sources of working capital and financing to operate its businesses without the DIP Facility.  The Debtor has an immediate need to obtain financing to permit, among other things, the orderly continuation of the operation of its

4

businesses, to maintain business relationships with vendors and customers and to satisfy other working capital needs. In the absence of immediate authorization of the DIP Facility, the Debtor could not continue to operate its businesses, and serious and irreparable harm to the Debtor and its estate would occur.

9. The ability of the Debtor to obtain sufficient working capital and liquidity through the incurrence of new indebtedness for borrowed money is vital to the Debtor. The preservation and maintenance of the going concern value of the Debtor is integral to a successful reorganization under chapter 11 of the Bankruptcy Code.

10. For these reasons, the Debtor has an immediate need for adequate postpetition financing. The Debtor was unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense. Moreover, the Debtor concluded that BNA, as the Debtor's parent, possessed unique knowledge of the Debtor's businesses and restructuring needs. BNA was identified as the most likely source of debtor-in-possession financing. Therefore, the Debtor determined, in its sound business judgment, that the proposal for debtor-in-possession financing provided by BNA was the most favorable under the circumstances, and addressed the Debtor's reasonably foreseeable capital needs. Through its financial advisor, the Debtor is in the process of seeking alternative

5

financing proposals from third parties and will update the Court at the hearing to consider the Motion.

11. The DIP Facility has been negotiated in good faith and at arm's length between the Debtor and the Postpetition Lender. The Debtor believes that the terms of the DIP Facility are fair and reasonable, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties, and are supported by reasonably equivalent value and fair consideration.

## A. Terms of the DIP Facility

12. The terms of the DIP Facility are more specifically set forth in the DIP term sheet attached hereto as Exhibit A. In accordance with Bankruptcy Rule 4001 and Local Rule 4001-2, the following is a summary of the material terms of the DIP Facility:[3]

| Parties: | Borrower: BNA Subsidiaries, LLC<br>Lender: The Bureau of National Affairs, Inc. |
|---|---|
| Commitment or Availability: | The Lender will make loans to the Borrower under a debtor in possession financing facility (the "DIP Facility") in an aggregate amount not to exceed in the aggregate $ 1.5 million. Upon the entry of an interim order approving the DIP Facility, the Borrower shall be permitted to borrow an amount not to exceed $400,000. Upon |

---

[3] Any capitalized terms used in the following summary that are not defined herein are ascribed the meanings given to such terms in the DIP term sheet. Moreover, to the extent that the terms set forth herein differ from the terms in the attached proposed Interim Order and the DIP term sheet, the Interim Order and the DIP term sheet shall govern.

| | |
|---|---|
| | entry of a final order approving the DIP Facility, the Borrower may draw on the full amount of $1.5 million subject to the terms and conditions set forth in this Term Sheet and the final order. |
| **Use of Proceeds:** | All advances under the DIP Facility shall be used by the Borrower solely to fund the Borrower's operations in accordance with the budget approved by the Lender (the "Budget"), as such Budget may be modified with the Lender's written consent. Compliance with the Budget will be measured ever week (after the first four weeks of the case) on a trailing four week basis.  For the avoidance of doubt, to the extent any funds under the DIP Facility are used by the Borrower to provide transition services to the Lender, such funds shall not constitute borrowings under the DIP Facility. The Lender shall pay the Borrower for transition services on a cost plus basis by the first day of each accounting period and the Borrower and Lender shall reconcile such payments every four weeks. |
| **Interest:** | Interest per annum for DIP Facility will be equal to four percent (4%) over the prevailing Libor Rate.  Interest will be calculated each month on the basis of actual days elapsed and a 360-day year, and will be payable monthly, in arrears. |
| **Maturity:** | The DIP Facility shall be repayable in full on the date (the "Maturity Date") which is the earliest of (a) 150 days from the Petition Date; (b) the effective date of a plan of reorganization; (c) the consummation of a sale of all or substantially all of the assets of the Borrower; (d) the occurrence of an Event of Default (as defined herein); (e) the entry of an order by the United States Bankruptcy Court ("Court") approving an alternative DIP Financing; and (f) such later date as BNA in its sole discretion may agree to in writing with the Borrower. |
| **Covenants:** | The Borrower covenants and agrees with BNA |

7

| | |
|---|---|
| | that, unless BNA otherwise consents in writing, so long as any amount payable hereunder is outstanding or the DIP Facility shall remain in place, it shall only use the advances made under the DIP Facility for the purposes set out herein and shall not use such funds to commence any action against BNA or its affiliates. As more fully set forth in the Interim DIP Order and Final DIP Order, the Borrower further covenants and agrees that no Obligation under the DIP Facility shall be subject to setoff or recoupment or any such rights under Bankruptcy Code section 553 or otherwise with respect to any claim the Borrower may have against the Lender arising on or before the Petition Date. |
| **Priority and Liens:** | As more fully set forth in the Interim DIP Order and Final DIP Order, the Obligations (i) pursuant to section 364(c)(1) of the Bankruptcy Code, shall constitute allowed superpriority administrative expense claims, (ii) pursuant to section 364(c)(2) of the Bankruptcy Code, shall be secured by a first priority, perfected lien on all the Borrower's assets that are not otherwise encumbered by a valid and perfected lien as of the Petition Date, and pursuant to section 364(c)(3) of the Bankruptcy Code, shall be secured by a perfected junior lien upon all of the Borrower's assets that are subject to valid and perfected liens of any party in existence as of the Petition Date, or a valid lien perfected (but not granted) thereafter to the extent permitted by the Bankruptcy Code that is senior to the liens granted to the Lender under the Interim DIP Order and Final DIP Order and (iii) shall be subordinate to the Carve-Out Expenses. |
| **Carve-Out Expenses:** | As more fully set forth in the Interim DIP Order and Final DIP Order, the liens on and security interests in the Collateral and the superiority administrative expenses claims shall be subordinate to the "Carve-Out Expenses": (i) statutory fees payable to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6); (b) fees payable to the clerk of the Bankruptcy Court; and (c) after the |

40000/0597-7012063v3

| | |
|---|---|
| | occurrence of a Carve-Out Event, an amount equal to (X) the reasonable and budgeted professional fees and expenses actually incurred in the Chapter 11 Case by any professionals retained under section 327, 363, or 1103(a) of the Bankruptcy Code (the "Permitted Professional Fees") prior to the occurrence of a Carve-Out Event but not paid on or before the date of such Carve-Out Event and (Y) $100,000 for payment of Permitted Professional Fees incurred after the occurrence of a Carve-Out Event, in each case to the extent subsequently allowed by the Bankruptcy Court. Upon the first day on which the Lender is entitled to exercise remedies under the Interim DIP Order and Final DIP Order (the "Carve-Out Event") and provides written notice thereof to Borrower (the "Carve-Out Event Notice"), the right of the Debtor to pay Permitted Professional Fees outside the Carve-Out shall terminate. |
| **Conditions Precedent to Borrowings:** | Availability of the DIP Facility shall be subject to the following conditions precedent, all of which shall be for the benefit of BNA and must be satisfied on occasion of each drawdown under the DIP Facility, unless waived in writing in advance by BNA: |
| | Interim Advances

1. The Court shall have issued an interim order, in form and substance acceptable to BNA and its counsel on or before September __, 2010, in relation to the Borrower (the "Interim DIP Order") which order, inter alia, shall approve the DIP Facility on an interim basis, including, without limitation, the grant of a first priority, perfected lien upon all unencumbered property and the proceeds thereof of the Borrower and a junior, properly perfected lien on any property securing a valid, properly perfected lien on any property held by the Borrower as of the Petition Date, to secure the obligations of the Borrower under the DIP Facility in accordance with the terms hereof, effective immediately upon the granting of the Interim DIP Order, without the need for |

40000/0597-7012063v3

any further action on the part of BNA, the Borrower or any other person (including, without limitation, the execution or delivery of any further documents or agreements or the recording, filing, indexing, entering or registering of any financing statements or other similar instruments or documents).

2.  The Borrower shall have retained a financial advisor/investment banker, satisfactory to BNA.

3.  The Interim DIP Order shall be in full force and effect and shall not have been reversed, stayed, modified or amended without the express written consent of BNA, and no application or motion shall have been made to the Court for any stay, modification or amendment of the Interim DIP Order and no stay, appeal or leave to appeal with respect to same shall be pending.

4.  No event has occurred and is continuing that constitutes an Event of Default or would constitute an Event of Default, but for the requirement that notice be given or time elapse or both.

Additional Advances

1.  The Court shall have entered a final and nonappealable order, in form and substance acceptable to BNA and its counsel on or before October __, 2010, in relation to the Borrower (the "Final DIP Order") which order, inter alia, shall approve the DIP Facility on an final basis, including, without limitation, the grant of a first priority, perfected lien upon all unencumbered property and the proceeds thereof of the Borrower and a junior, properly perfected lien on any property securing a valid, properly perfected lien on any property held by the Borrower as of the Petition Date, to secure the obligations of the Borrower under the DIP Facility in accordance with the terms hereof, effective immediately upon the granting of the Interim DIP Order, without the need for any further action on the part of BNA, the Borrower or any other person (including,

40000/0597-7012063v3

| | |
|---|---|
| | without limitation, the execution or delivery of any further documents or agreements or the recording, filing, indexing, entering or registering of any financing statements or other similar instruments or documents).<br><br>    2.    All of the funds available under Interim DIP Order shall have been borrowed and used in accordance with the Budget and any variations to which the Borrower and BNA agree in writing.<br><br>    3.    The Final DIP Order shall be in full force and effect and shall not have been reversed, stayed, modified or amended without the express written consent of BNA, and no application or motion shall have been made to the Court for any stay, modification or amendment of the Final DIP Order and no stay, appeal or leave to appeal with respect to same shall be pending.<br><br>    4.    No event has occurred and is continuing that constitutes an Event of Default or would constitute an Event of Default, but for the requirement that notice be given or time elapse or both. |
| **Events of Default:** | The occurrence of any one or more of the following events (each such event and the expiry of the cure period, if any, provided in connection therewith, being herein referred to as an "Event of Default") shall constitute a default under this Term Sheet:<br><br>    1.    The failure by the Borrower to perform or comply with any term, condition, covenant or obligation contained in this Term Sheet, the Interim DIP Order or Final DIP Order, on its part to be performed or complied with where any such failure to perform or comply shall not be remedied within three (3) business days from notice of default.<br><br>    2.    The cessation of the DIP Facility to be in full force and effect or the DIP Facility being declared by the Court to be null and void or the validity or enforceability the DIP |

Facility being contested by the Borrower or the Borrower denying in writing that it has any further liability or obligation under the DIP Facility or the Lender ceasing to have the benefit of the Liens granted by the Interim DIP Order or Final DIP Order.

3. Except as permitted in the Interim DIP Order or Final DIP Order, the entry of any order of the Court granting a superpriority claim or lien pari passu with or senior to that granted to the Lender hereunder.

4. If, as of any Reporting Date, the Borrower's cumulative cash disbursements with respect to the "Debtor's Professional Fees-Ordinary" from the period from the Petition Date through the end of any calendar month for which fees are sought exceeds 15% from the amount included in the Budget (i.e., exceeds scheduled disbursements by more than 15%).

5. The Borrower fails to make any interest payments due under the Interim DIP Order or Final DIP Order within three (3) business days of when due.

6. The Borrower fails to file a proposed plan of reorganization (as may be amended, the "Reorganization Plan") and disclosure statement with respect thereto (the "Disclosure Statement") on or before October 18, 2010.

7. A Disclosure Statement has not been approved by November 23, 2010.

8. A Reorganization Plan has not been confirmed and become effective by January 15, 2011.

9. The entry of an order converting the Borrower's chapter 11 case to a case under chapter 7 of the Bankruptcy Code, or the Borrower filing a motion or not opposing a motion seeking such relief.

10. The entry of an order dismissing the Borrower's chapter 11 case, or the Borrower

40000/0597-7012063v3

filing a motion or not opposing a motion seeking such relief, unless consented to by the Lender.

11.   The entry of any order in the Borrower's chapter 11 case or any successor case, which order constitutes the stay, modification, appeal or reversal of this Order or which otherwise affects the effectiveness of this Order.

12.   The entry of an order in the Borrower's chapter 11 case appointing any examiner having expanded powers or a trustee to operate all or any part of the Borrower's business.

13.   The entry of an order in the Borrower's chapter 11 case granting relief from the automatic stay so as to allow a third party or third parties to proceed against any property, including the Collateral, of the Borrower or to commence or continue any prepetition litigation against the Borrower involving potential liability not covered by insurance, in excess of $50,000 in the aggregate.

14.   Any judgment or order as to postpetition liability or debt for the payment of money in excess of $50,000 shall be rendered against the Borrower, and the enforcement thereof shall not have been stayed.

15.   Any non-monetary judgment or order with respect to a postpetition event shall be rendered against the Borrower which does or would reasonably be expected to (i) cause a material adverse change in the financial condition, business, prospects, operations or assets of the Borrower or (ii) have a material adverse effect on the rights and remedies of the Lender hereunder, and there shall be a period of ten (10) consecutive days during which a stay of enforcement of such judgment or order, by reason of a pending appeal or otherwise, shall not be in effect.

13

| | |
|---|---|
| | 16. The Interim DIP Order or Final DIP Order being amended or modified without the consent of the Lender. |
| **Commitment and Other Fees** | None |
| **Expenses** | The Borrower shall reimburse BNA for the professional fees and expenses incurred by BNA, as Lender, in an amount not to exceed $150,000. |
| **Sale Of Assets** | Unless otherwise consented to in writing by BNA, the proceeds from any sale of assets, other than sales in the ordinary course of business, shall be first used to reduce any amount outstanding under the DIP Facility, and any such payments shall reduce the aggregate Commitment of BNA on a dollar for dollar basis. |
| **Financial Reporting:** | Unless otherwise consented to by BNA:<br><br>1. The Borrower shall provide to BNA on Wednesday of each week a list of all planned disbursements for such week.<br><br>2. The Borrower shall provide to BNA no later than 3:00 p.m. on Tuesday of each week (each, a "Reporting Date"), (a) a full accounting of all cash receipts and expenditures incurred for the past week commencing the opening of business on the Monday past up through the close of business of such past week, (b) an update on the status of the steps taken with respect to the Sale Process and the formulation of a reorganization plan and (c) an estimate of the funding required for the succeeding 2 weeks. |

**B.    Provisions that Potentially implicate Local Rule 4001-2**

13.    Rule 4001-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") requires that

certain provisions contained in the DIP Facility documents be
highlighted, and that the Debtor must provide justification for
the inclusion of such highlighted provision(s).[4]  The Debtor
believes that Rule 4001-2 is minimally implicated by the

---

[4]  Local Rule 4001-2(a)(i) states, "All Financing Motions must (1) recite
whether the proposed form of order and/or underlying cash collateral
stipulation or loan agreement contains any provision of the type
indicated below, (2) identify the location of any such provision in the
proposed form of order, cash collateral stipulation and/or loan agreement
and (3) the justification for the inclusion of such provision:

(A) Provisions that grant cross-collateralization protection (other than
replacement liens or other adequate protection) to the prepetition
secured creditors (i.e., clauses that secure prepetition debt by post-
petition assets in which the secured creditor would not otherwise have a
security interest by virtue o f its prepetition security agreement or
applicable law).

(B) Provisions or findings of fact that bind the estate or all parties in
interest with respect to the validity, perfection or amount of the
secured creditor's prepetition lien or debt or the waiver of claims
against the secured creditor without first giving parties-in-interest at
least 75 days from the entry of the order and the creditors' committee,
if formed, at least 60 days from the date of its formation to investigate
such matters.

(C) Provisions that seek to waive, without notice, whatever rights the
estate may have under 11 U.S.C. § 506(c).

(D) Provisions that grant immediately to the prepetition secured creditor
liens on the debtor's claims and causes of action arising under 11 U.S.C.
§§ 544, 545, 547, 548, and 549.

(E) Provisions that deem prepetition secured debt to be post-petition
debt or that use post-petition loans from a prepetition secured creditor
to pay part or all of that secured creditor's prepetition debt, other
than as provided in 11 U.S.C. § 552(b).

(F) Provisions that provide disparate treatment for the professionals
retained by a creditors' committee from that provided for the
professionals retained by the debtor with respect to a professional fee
carveout.

(G) Provisions that  prime any secured lien, without the consent of that
lienor."

40000/0597-7012063v3

provisions of the DIP Facility, but to the extent that Local Rule 4001-2 is implicated, that such provisions are justified and necessary in the context and circumstances of this case.

14. Local Rule 4001-2(a)(i)(D) provides for additional disclosure with respect to provisions that grant liens on the Debtor's claims or causes of action under 11 U.S.C. §§ 544, 545, 547, 548 and 549. The Debtor does not believe that this Local Rule applies because the DIP Facility does not provide for any liens on such avoidance actions. Rather the DIP Facility provides the DIP Lender with an allowed Superpriority Administrative Claim (as set forth in the DIP term sheet and as defined in paragraph 4 of the proposed Interim Order), which claim shall be payable from and have recourse to, in addition to the property of the Debtor that is made subject to security interests and liens in favor of the DIP Lender, any unencumbered prepetition and postpetition property of the Debtor.

15. For the foregoing reasons, the Debtor believes that Local Rule 4001-2 is minimally implicated and to the extent that it is implicated there are eminently sensible reasons for approval of the DIP Facility and the proposed Interim Order.

**C.    The DIP Facility Should Be Approved**

16. Bankruptcy Code sections 364(c) and (d)(1) provide:

(c)  If the trustee is unable to obtain unsecured credit allowable under sections 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt -

    (1)  with priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of this title;

    (2)  secured by a lien on property of the estate that is not otherwise subject to a lien; or

    (3)  secured by a junior lien on property of the estate that is subject to a lien.

17.  The Debtor was unable to procure adequate postpetition financing in the form of unsecured credit or unsecured debt with an administrative priority. The circumstances of this case require the Debtor to obtain financing under Bankruptcy Code sections 364(c). Therefore, the Debtor believes that this Court should authorize the Debtor to obtain the postpetition financing to the extent and pursuant to the terms contained herein, in the DIP term sheet and the proposed Interim Order attached hereto as Exhibit B.

18.  The proposed DIP Facility is required to preserve and maintain the Debtor's going concern value and is therefore in the best interests of the Debtor's estate and creditors. The availability of credit under the DIP Facility is necessary to provide working capital for the Debtor to continue

to operate its businesses. Moreover, the available credit will give the Debtor's vendors and suppliers the necessary confidence to continue ongoing relationships with the Debtor, including the extension of credit terms for the payment of goods and services -and also will be viewed favorably by the Debtor's employees and customers, and thereby help promote the Debtor's successful reorganization.

19. After determining that postpetition financing was available only under Bankruptcy Code sections 364(c), the Debtor negotiated the DIP Facility at arm's length and pursuant to its business judgment, which is to be accorded deference so long as it does not run afoul of the provisions of and policies underlying the Bankruptcy Code. See, e.g., Bray v. Shenandoah Fed. Sav. & Loan Ass'n (In re Snowshoe Co.), 789 F.2d 1085, 1088 (4th Cir. 1986) (approving debtor-in-possession financing necessary to sustain seasonal business); In re Ames Dept. Stores, Inc. 115 B.R. 34, 40 (S.D.N.Y. 1990) ("cases consistently reflect that the court's discretion under section 364 is to be utilized on grounds that permit reasonable business judgment to be exercised so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit parties in interest").

18

20.   The terms and conditions of the DIP Facility are fair and reasonable and were negotiated by the parties in good faith and at arm's length.   Accordingly, the DIP Lender should be accorded the benefits of Bankruptcy Code section 364(e) with respect to the postpetition financing.

21.   The Debtor additionally requests that the Court order that the security interests and liens granted to the DIP Lender be deemed to constitute valid and duly perfected security interests and liens without the filing or recordation of financing statements, mortgages, notices of lien or similar instruments in any jurisdiction or taking of any other action in order to validate and perfect the security interests and liens granted to the DIP Lender, and that such security interests and liens be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination as of the time and date of entry of the proposed Interim Order.

22.   The Debtor further requests that the automatic stay provisions of section 362 of the Bankruptcy Code be vacated and modified to the extent necessary so as to permit the DIP Lender to exercise, upon the occurrence of an Event of Default (as defined in the DIP term sheet and the proposed Interim Order) and the giving of five (5) days' written notice to the Debtor, all rights and remedies provided for in the DIP term sheet and the proposed Interim Order as entered by the Court.

19

**D.    The Interim Approval Should Be Granted**

23.    Bankruptcy Rules 4001(b) and (c) provide that a final hearing on a motion to use cash collateral pursuant to Bankruptcy Code section 363 and to obtain credit pursuant to Bankruptcy Code section 364 may not be commenced earlier than fifteen (15) days after the service of such motion.  Upon request, however, the Court is empowered to conduct a preliminary expedited hearing on the motion and authorize the use of cash collateral and the obtaining of credit to the extent necessary to avoid immediate and irreparable harm to the Debtor's estate.

24.    The Debtor requests that the Court schedule and conduct an interim hearing to consider entry of the proposed Interim Order authorizing the Debtor from and after the entry of the Interim Order until the Final Hearing to borrow up to an aggregate amount of $400,000.  This relief will enable the Debtor to operate its businesses in the ordinary course and avoid immediate and irreparable harm and prejudice to its estate and all parties in interest, pending the Final Hearing.

**E.    Notice with Respect to Interim Financing Order**

25.    Notice of this Motion has been given by facsimile or overnight delivery to the following parties, or in lieu thereof, to their counsel: (i) the United States Trustee; (ii) counsel to the DIP Lender; and (iii) the holders of the Debtor's

20

twenty largest unsecured claims (collectively, the "Master Service List"). The Debtor submits that, under the circumstances, no further notice of the hearing on the interim financing is necessary and request that any further notice be dispensed with and waived.

**F.    Notice with Respect to Final Financing Order**

26.    The Debtor further respectfully requests that the Court schedule the Final Hearing and authorize it to serve a copy of the signed Interim Order which fixes the time and date for the filing of objections by first-class mail upon (i) the Office of the United States Trustee for the District of Delaware; (ii) counsel to the DIP Lender; (iii) the Debtor's top twenty (20) largest unsecured creditors; (iv) counsel to any statutory committees appointed in this chapter 11 case, (v) any party who filed a request for notices in this chapter 11 case pursuant to Bankruptcy Rule 2002 prior to the date set forth in the Interim Order for service of notice of the Final Hearing, and (vi) any known lienholders of the Debtor. The Debtor requests that the Court consider such notice of the Final Hearing to be sufficient notice under Bankruptcy Rule 4001 and Local Rule 2002-1.[5]

---

[5]    Local Rule 2002-1(b) provides that "[i]n cases under chapter 11, all motions ... shall be served only upon counsel for the debtor, the United States Trustee, counsel for all official committees, all parties who file a request for service of notices pursuant to Fed. R. Bankr. P. 2002(i), and on any party whose rights are affected by the motion. If an official

21

27. No previous request for the relief sought herein has been made to this Court or any other court.

WHEREFORE, the Debtor respectfully requests that the Court enter an order (i) granting the relief requested herein and (ii) granting such other relief as is just and proper.

Dated: September 23, 2010
Wilmington, Delaware

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.

By: _____
Norman L. Pernick (No. 2290)
Marion M. Quirk (No. 4136)
Karen M. Grivner (No. 4372)
500 Delaware Avenue
Suite 1410
Wilmington, DE 19801
Tel: (302) 652-3131
Fax: (302) 652-3117

Proposed Counsel for the Debtor
and Debtor in Possession

---

unsecured creditors' committee has not been appointed, service shall be made on the 20 largest unsecured creditors in the case in lieu of the committee."

40000/0597-7012063v3