# EXHIBIT B

(Proposed DIP Order)

.

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - x
                 :
In re:              :    Chapter 11
                 :
BNA SUBSIDIARIES, LLC[1]  :    Case No. 10-_____(____)
                 :
                 :
          Debtor.  :    **Related Docket No. __**
- - - - - - - - - - - - - x

### INTERIM ORDER (I) AUTHORIZING DEBTOR TO OBTAIN POSTPETITION FINANCING PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364(C)(1), 364(C)(2), AND 364(C)(3) AND (II) SCHEDULING FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001(C)

Upon the motion (the "Motion"),[2] dated September 23, 2010, of BNA Subsidiaries, LLC, as a debtor and debtor-in-possession (the "Debtor") (i) seeking this Court's authorization, pursuant to sections 105, 361, 362, 363, 364(c)(1), 364(c)(2), and 364(c)(3) of chapter 11 of title 11 of the United States Code, 11 U.S.C, §§ 101, et seq. (the "Bankruptcy Code"), and

---

[1]    The last four digits of the Debtor's federal tax identification number are 5412.

[2]    Terms used herein and not otherwise defined shall have the meanings ascribed to them in the Motion.

Rules 2002 and 4001 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules"), to

obtain postpetition financing (the "DIP Facility") as

described in the term sheet attached hereto as Exhibit A

(the "DIP Term Sheet") up to the aggregate principal

amount of $1.5 million from The Bureau of National

Affairs, Inc. ("BNA" or the "DIP Lender") with such DIP

Facility:

      (a) having priority, pursuant to Bankruptcy Code section 364(c)(1), over any and all administrative expenses of the kind specified in sections Bankruptcy Code 503(b) and 507(b),

      (b) being secured, pursuant to Bankruptcy Code section 364(c)(2), by perfected first priority security interests in and liens upon all unencumbered prepetition and postpetition property of the Debtor including, but not limited to, cash collateral, inventory, accounts receivable, other rights to payment whether arising before or after the date of the filing of the petition herein (the "Petition Date"), property, plant, equipment, general intangibles, instruments, interests in leaseholds, real property, patents, copyrights, trademarks, trade names, other intellectual property and the proceeds of all the foregoing, but excluding all of the Debtor's rights in and to claims and causes of action under Bankruptcy Code sections 502(d), 544, 545, 547, 548, 550 or 551 (collectively, the "Avoidance Actions"),

      (c) being secured, pursuant to Bankruptcy Code section 364(c)(3), by perfected junior security interests in and liens upon all prepetition and postpetition property of the Debtor that is subject to a Permitted Lien (as defined below) (all of the property

specified in clauses (i), (ii), and (iii) being
hereinafter collectively referred to in this Interim
Order as the "Collateral");

(d)   being subordinate to the Carve-Out
Expenses;

(ii) requesting, pursuant to Bankruptcy Rule 4001, that

an interim hearing (the "Interim Hearing") on the Motion

be held for this Court to consider entry of an interim

order annexed to the Motion (the "Interim Order")

authorizing the Debtor, on an interim basis, to

forthwith borrow the Interim Advance from the DIP

Facility up to the aggregate amount of $400,000 from the

DIP Lender, and (iii) requesting that within 30 days of

the entry of the Interim Order this Court schedule a

final hearing (the "Final Hearing") to consider entry of

a final order authorizing the balance of the DIP

Facility on a final basis, as set forth in the Motion

and the DIP Term Sheet attached to the Motion.

Pursuant to Bankruptcy Rules 4001(b) and

4001(c)(1) and under the circumstances, due and

sufficient notice of the Motion and the Interim Hearing

having been given by the Debtor to the twenty (20)

largest unsecured creditors of the Debtor, the United

States Trustee for the District of Delaware, the DIP
Lender, and other affected parties; the Interim Hearing
having been conducted on September __, 2010, and upon
all the pleadings filed with this Court, and upon the
record made by the Debtor at the Interim Hearing and
after due deliberation and consideration and sufficient
cause appearing therefor;

**IT IS FOUND AND DETERMINED THAT:**

A.    This Court has core jurisdiction over
these proceedings and the parties and property affected
hereby pursuant to 28 U.S.C. §§ 157(b) and 1334.

B.    The Debtor has an immediate need to
obtain financing to permit, among other things, the
orderly continuation of the operation of its business,
to maintain business relationships with vendors and
suppliers, and to satisfy other working capital needs.
The Debtor has been unable to obtain adequate unsecured
credit allowable under Bankruptcy Code section 503(b)(1)
as an administrative expense.

C.    A financing facility in the amount
provided by the DIP Facility is unavailable to the
Debtor without it granting to the DIP Lender: (i)

pursuant to Section 364(c)(1) of the Code, allowed claims, with respect to all indebtedness and obligations of the Debtor under the DIP Facility (collectively, the "Obligations"), having priority over any and all administrative expenses of the kind specified in Bankruptcy Code sections 503(b) and 507(b); (ii) pursuant to Bankruptcy Code section 364(c)(2), security for such Obligations by the granting of perfected first priority senior security interests in and liens upon all unencumbered prepetition and postpetition property of the Debtor and the proceeds of all of the foregoing, and (iii) pursuant to Bankruptcy Code section 364(c)(3), security for such Obligations by the granting of junior and subordinated security interests in all of the Debtor's assets that are subject to valid and perfected liens of any party in existence as of the Petition Date, or a valid lien perfected (but not granted) thereafter to the extent permitted by the Bankruptcy Code that is senior to the liens granted to the DIP Lender under the Interim Order (the "Permitted Liens").

D.   The ability of the Debtor to obtain sufficient working capital and liquidity through the

incurrence of new indebtedness for borrowed money and other financial accommodations is vital to the Debtor. The preservation and maintenance of the going concern value of the Debtor is integral to a successful reorganization of the Debtor pursuant to the provisions of Chapter 11 of the Bankruptcy Code.

E.    Based upon the record presented at the Interim Hearing, it appears that: (i) the terms of the DIP Facility appear to be fair and reasonable, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties and are supported by reasonably equivalent value and fair consideration; and (ii) the DIP Facility has been negotiated in good faith and at arm's-length between the Debtor and the DIP Lender and any credit extended and loans made to the Debtor by the DIP Lender pursuant to the DIP Facility shall be deemed to have been extended by the DIP Lender in good faith, as that term is used in Bankruptcy Code section 364(e).

F.    The Debtor has requested immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2).  Absent entry of this Interim

Order, the Debtor's estate will be immediately and
irreparably harmed.

**NOW THEREFORE IT IS HEREBY ORDERED AND ADJUDGED THAT**

1.    The DIP Facility is hereby approved on an
interim basis and the Debtor is authorized to borrow up
to the aggregate amount of $400,000 on the terms and
conditions set forth in this Interim Order and the
attached DIP Term Sheet, which borrowings shall be used
for the purpose of providing working capital to the
Debtor and expended in accordance with the Budget,
attached hereto as Exhibit B and DIP Term Sheet.

2.    The Debtor is expressly authorized and
empowered to borrow on the basis of the DIP Term Sheet
and to perform and do all acts that may be required by
the DIP Term Sheet.  Upon entry of this Interim Order,
the DIP Term Sheet shall constitute valid and binding
obligations of the Debtor, enforceable in accordance
with its terms.  No obligation, payment or transfer
under the DIP Term Sheet and this Interim Order shall be
stayed or restrained and no obligation or transfer made
pursuant to this Interim Order shall be voidable or

recoverable under the Bankruptcy Code or under any other
applicable law.

3.   For the avoidance of doubt, to the extent
any funds under the DIP Facility are used by the Debtor
to provide transition services to the DIP Lender, such
funds shall not constitute borrowings under the DIP
Facility.  The DIP Lender shall pay the Debtor for
transition services on a cost plus basis by the first
day of each accounting period and the Debtor and DIP
Lender shall reconcile such payments every four weeks.

4.   For all of the Debtor's Obligations
arising under and in connection with the DIP Facility,
the DIP Lender is granted, pursuant to Bankruptcy Code
section 364(c)(1), an allowed claim (which allowed claim
shall be payable from and have recourse to, in addition
to the property of the Debtor that is made subject to
security interests and liens in favor of the DIP Lender
as set forth in this Interim Order, any unencumbered
prepetition and postpetition property of the Debtor)
having priority over any and all administrative expenses
of the kind specified in Bankruptcy Code sections 503(b)

and 507(b) (the "Superpriority Administrative Claim"), subordinate and subject only to Carve-Out Expenses.

5.    As security for all of the Debtor's Obligations arising under the DIP Facility, and subject only to the Carve-Out Expenses, the DIP Lender is hereby granted (effective upon the date of this Interim Order and without the necessity of the execution by the Debtor of mortgages, security agreements or otherwise):

(a)    pursuant to Bankruptcy Code section 364(c)(2), perfected first priority senior security interests in and liens upon all unencumbered prepetition and postpetition property of the Debtor, but excluding all of the Debtor's rights in and to Avoidance Actions; and

(b)    pursuant to Bankruptcy Code section 364(c)(3), perfected junior security interests in and liens upon all prepetition property of the Debtor's estate that is subject to Permitted Liens or such postpetition property that becomes subject to a validly perfected first priority lien as permitted by Bankruptcy Code section 546(a).

6.    The liens on and security interests in the Collateral and the superiority administrative expenses claims shall be subordinate to the following "Carve-Out Expenses": (i) statutory fees payable to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6); (b) fees payable to the clerk of the Bankruptcy Court; and (c) after the occurrence of a Carve-Out Event, an amount equal to (X) the reasonable and budgeted professional fees and expenses actually incurred in the Chapter 11 Case by any professionals retained under section 327, 363, or 1103(a) of the Bankruptcy Code (the "Permitted Professional Fees") prior to the occurrence of a Carve-Out Event but not paid on or before the date of such Carve-Out Event and (Y) $100,000 for payment of Permitted Professional Fees for professionals incurred after the occurrence of a Carve-Out Event, in each case to the extent subsequently allowed by the Bankruptcy Court.  Upon the first day on which the Lender is entitled to exercise remedies under the Interim Order (the "Carve-Out Event") and provides written notice thereof to Debtor, the right of the Debtor to pay

Permitted Professional Fees outside the Carve-Out shall
terminate.

7. So long as an Event of Default shall not
have occurred and be continuing, the Debtor shall be
permitted to pay administrative expenses allowed and
fees payable under Bankruptcy Code sections 330 and 331,
as the same may be due and payable in accordance with
the Budget. Notwithstanding the occurrence of any Event
of Default, Permitted Professional Fees incurred but
unpaid prior to the occurrence of such Event of Default,
but ultimately approved after the occurrence of such
Event of Default shall be paid to the extent set forth
in the Budget.

8. The security interests and liens granted
to the DIP Lender hereunder shall not be subordinated to
or made pari passu with any other lien or security
interest under Bankruptcy Code section 364(d) or
otherwise, except with respect to the Carve-Out Expenses
as expressly set forth herein.

9. No other claim or lien having a priority
superior to or pari passu with those granted by this
Interim Order to the DIP Lender shall be granted while

any portion of the Obligations arising under the DIP Facility remains outstanding.

10. The DIP Lender shall not be required to file or record financing statements, mortgages, notices of lien or similar instruments in any jurisdiction or take any other action in order to validate and perfect the security interests and liens granted to them pursuant to this Interim Order and such security interests and liens shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination as of the time and date of entry of this Interim Order. If the DIP Lender shall, in its sole discretion, choose to file such financing statements, mortgages, notices of lien or similar instruments or otherwise confirm perfection of such security interests and liens, all such documents shall be deemed to have been filed or recorded at the time and on the date of entry of this Interim Order.

11. The Debtor is authorized and directed to do and perform all acts, to make, execute and deliver all instruments and documents (including, without limitation, the execution of security agreements,

mortgages and financing statements), and to pay fees, which may be reasonably required or necessary for the Debtor's performance under the DIP Facility.

12. The automatic stay provisions of Bankruptcy Code section 362 are vacated and modified to the extent necessary so as to permit the DIP Lender to exercise, upon the occurrence of an Event of Default and the giving of the five (5) days' written notice to the Debtor, all rights and remedies provided for in the Term Sheet and this Interim Order. In any hearing after the giving of the aforementioned notice, the only issue that may be raised by any party in opposition thereto shall be whether, in fact, an Event of Default has occurred and is continuing. In no event shall the DIP Lender be subject to the equitable doctrine of "marshalling" or any similar doctrine with respect to the Collateral.

13. The following shall constitute an Event of Default under this Interim Order and the DIP Term Sheet:

> (1) The failure by the Debtor to perform or comply with any term, condition, covenant or obligation contained in

the DIP Term Sheet or in this
Interim Order, on its part to be
performed or complied with where any
such failure to perform or comply
shall not be remedied within three
(3) business days from notice of
default.

(2)   The cessation of the DIP Facility to
be in full force and effect or the
DIP Facility being declared by the
Court to be null and void or the
validity or enforceability the DIP
Facility being contested by the
Debtor or the Debtor denying in
writing that it has any further
liability or obligation under the
DIP Facility or the DIP Lender
ceasing to have the benefit of the
liens granted by this Interim Order.

(3)   Except as permitted in this Interim
Order, the entry of any order of the
Court granting a superpriority claim

or lien _pari_ _passu_ with or senior to that granted to the DIP Lender hereunder.

(4) If, as of any Reporting Date, the Debtor's cumulative cash disbursements with respect to the "Debtors Professional Fees-Ordinary" from the period from the Petition Date through the end of any calendar month for which fees are sought exceeds 15% from the amount included in the Budget (i.e., exceeds scheduled disbursements by more than 15%).

(5) The Debtor fails to make any interest payments due under this Interim Order within three (3) business days of when due.

(6) The Debtor fails to file a proposed plan of reorganization (as may be amended, the "Reorganization Plan") and disclosure statement with

respect thereto (the "Disclosure
Statement") on or before October 18,
2010.

(7)   A Disclosure Statement has not been
approved by November 23, 2010.

(8)   A Reorganization Plan has not been
confirmed and become effective by
January 15, 2011.

(9)   The entry of an order converting the
Debtor's chapter 11 case to a case
under chapter 7 of the Bankruptcy
Code, or the Debtor filing a motion
or not opposing a motion seeking
such relief.

(10)  The entry of an order dismissing the
Debtor's chapter 11 case, or the
Debtor filing a motion or not
opposing a motion seeking such
relief, unless consented to by the
DIP Lender.

(11)  The entry of any order in the
Debtor's chapter 11 case or any

successor case, which order
constitutes the stay, modification,
appeal or reversal of this Interim
Order or which otherwise affects the
effectiveness of this Interim Order.

(12) The entry of an order in the
Debtor's chapter 11 case appointing
any examiner having expanded powers
or a trustee to operate all or any
part of the Debtor's business.

(13) The entry of an order in the
Debtor's chapter 11 case granting
relief from the automatic stay so as
to allow a third party or third
parties to proceed against any
property, including the Collateral,
of the Debtor or to commence or
continue any prepetition litigation
against the Debtor involving
potential liability not covered by
insurance, in excess of $50,000 in
the aggregate.

(14) Any judgment or order as to
postpetition liability or debt for
the payment of money in excess of
$50,000 shall be rendered against
the Debtor, and the enforcement
thereof shall not have been stayed.

(15) Any non-monetary judgment or order
with respect to a postpetition event
shall be rendered against the Debtor
which does or would reasonably be
expected to (i) cause a material
adverse change in the financial
condition, business, prospects,
operations or assets of the Debtor
or (ii) have a material adverse
effect on the rights and remedies of
the DIP Lender hereunder, and there
shall be a period of ten (10)
consecutive days during which a stay
of enforcement of such judgment or
order, by reason of a pending appeal
or otherwise, shall not be in effect.

(16) This Interim Order being amended or modified without the consent of the DIP Lender.

14. The DIP Term Sheet and the provisions of this Interim Order shall be binding upon the DIP Lender and the Debtor and its respective successors and assigns (including any Chapter 7 or Chapter 11 trustee hereinafter appointed or elected for the estate of the Debtor or an examiner appointed pursuant to Bankruptcy Code section 1104) and inure to the benefit of the DIP Lender and the Debtor and (except with respect to any trustee hereinafter appointed or elected for the estate of the Debtor) its respective successors and assigns.

15. If any or all of the provisions of this Interim Order are hereafter reversed, modified, vacated or stayed, such reversal, stay, modification or vacation shall not affect (i) the validity of any obligation, indebtedness or liability incurred by the Debtor to the DIP Lender prior to written notice to such party of the effective date of such reversal, stay, modification or vacation, or (ii) the validity and enforceability of any lien or priority authorized or created hereby or

pursuant to the DIP Term Sheet with respect to any such
obligations, indebtedness or liability. Notwithstanding
any such reversal, stay, modification or vacation, <u>any</u>
use of Collateral or any indebtedness, obligation or
liability incurred by the Debtor to the DIP Lender prior
to written notice to such party of the effective date of
such reversal, stay, modification or vacation shall be
governed in all respects by the original provisions of
this Interim Order, and the DIP Lender shall be entitled
to all the rights, remedies, privileges and benefits,
granted herein and/or pursuant to the DIP Term Sheet
with respect to the DIP Facility and such indebtedness,
obligation or liability. The obligations of the Debtor
under this Interim Order and the DIP Facility shall not
be discharged by the entry of an order confirming a plan
of reorganization in the Case and, pursuant to
Bankruptcy Code section 1141(d)(4), the Debtor has
waived such discharge (such obligations being payable in
accordance with the terms of this Interim Order and the
DIP Facility).

16.  The Final Hearing on the Motion is scheduled for October __, 2010 at __:__ _._ before this Court.

17.  Under the circumstances, the notice given by the Debtor of the Motion and of the Interim Hearing constitutes due and sufficient notice of the Motion and of the Interim Hearing.  The Debtor shall promptly mail copies of this Interim Order to the parties having been given notice of the Interim Hearing and to any other party which has filed a request for notices with this Court and to any Committee if the same has been appointed, or Committee counsel, if the same has been appointed.  Any party in interest objecting to the relief sought at the Final Hearing shall serve and file written objections; which objections shall be served upon (1) Attorney for the Debtor, Cole, Schotz, Meisel, Farnan & Leonard, P.A., 500 Delaware Avenue, Suite 1410, Wilmington, Delaware 19801, Attention: Norman Pernick, Esq., Marion M. Quirk, Esq. (Facsimile: 302.574.2107); (ii) Attorney for the DIP Lender, Skadden, Arps, Slate, Meagher & Flom LLP, P.O. Box 636, Wilmington, Delaware 19899, Attention: Gregg M, Galardi, Esq., Kristhy M.

Peguero, Esq. (Facsimile: 302-651-3001); and (iii) the
Office of the United States Trustee for the District of
Delaware, and shall be filed with the Clerk of the
United States Bankruptcy Court, District of Delaware, in
each case to allow receipt by the foregoing no later
than five (5) business days before such hearing.

18. This Interim Order shall supersede and
govern over the terms of the DIP Term Sheet, to the
extent that such terms are inconsistent with this
Interim Order.

19. No borrowings or Collateral may be used
to object to, contest or raise any defense to the
validity, perfection, priority, extent or enforceability
of the Debtor's Obligations under the DIP Facility nor
to assert any claims or causes of action against the DIP
Lender; provided, however, that nothing in this Interim
Order shall preclude the Debtor to use the borrowings or
Collateral to investigate potential claims against BNA.

20. No Obligation under the DIP Facility
shall be subject to setoff or recoupment or any such
rights under Bankruptcy Code section 553 or otherwise

22

with respect to any claim the Debtor may have against the DIP Lender arising on or before the Petition Date.

21. Notwithstanding any provision set forth in this Interim Order, nothing in this Interim Order shall be construed to grant to the DIP Lender or any party in interest a lien on the Avoidance Actions.

22. Nothing in this Interim Order shall be construed as a request by the DIP Lender to limit any right of the Debtor and its estate to surcharge against Collateral pursuant to Bankruptcy Code section 506(c); provided however, that the DIP Lender may request a limitation of any rights the Debtor and its estate may have to surcharge against Collateral pursuant to section 506(c) of the Bankruptcy Code at the Final Hearing.

Dated:     Wilmington, Delaware
           September ____, 2010


_____
United States Bankruptcy Judge

# EXHIBIT A

(DIP Term Sheet)

# BNA Subsidiaries, LLC

## Terms of Debtor-in-Possession Financing

| | |
|---|---|
| Borrower: | BNA Subsidiaries, LLC (the "Debtor") |
| Lender: | The Bureau of National Affairs, Inc. ("BNA") |

**Commitment/ Availability:** The Lender will make loans to the Borrower under a debtor in possession financing facility (the "DIP Facility") in an aggregate amount not to exceed in the aggregate $1.5 million. Upon the entry of an interim order approving the DIP Facility, the Borrower shall be permitted to borrow an amount not to exceed $400,000. Upon entry of a final order approving the DIP Facility, the Borrower may draw on the full amount of $1.5 million subject to the terms and conditions set forth in this Term Sheet and the final order.

**Use of Proceeds:** All advances under the DIP Facility shall be used by the Borrower solely to fund the Borrower's operations in accordance with the budget approved by the Lender (the "Budget"), as such Budget may be modified with the Lender's written consent. Compliance with the Budget will be measured ever week (after the first four weeks of the case) on a trailing four week basis. For the avoidance of doubt, to the extent any funds under the DIP Facility are used by the Borrower to provide transition services to the Lender, such funds shall not constitute borrowings under the DIP Facility. The Lender shall pay the Borrower for transition services on a cost plus basis by the first day of each accounting period and the Borrower and Lender shall reconcile such payments every four weeks.

**Interest:** Interest per annum for DIP Facility will be equal to four percent (4%) over the prevailing 1-month Libor Rate. Interest will be calculated each month on the basis of actual days elapsed and a 360-day year, and will be payable monthly, in arrears.

**Maturity:** The DIP Facility shall be repayable in full on the date (the "Maturity Date") which is the earliest of (a) 150 days from the Petition Date; (b) the effective date of a plan of reorganization; (c) the consummation of a sale of all or substantially all of the assets of the Borrower; (d) the occurrence of an Event of Default (as defined herein); (e) the entry of an order by the United States Bankruptcy Court ("Court") approving an alternative DIP Financing; and (f) such later date as BNA in its sole discretion may agree to in writing with the Borrower.

**Conditions Precedent to Funding:** Availability of the DIP Facility shall be subject to the following conditions precedent, all of which shall be for the benefit of BNA and must be satisfied on occasion of each drawdown under the DIP Facility, unless waived in writing in advance by BNA:

Interim Advances

1.  The Court shall have issued an interim order, in form and substance acceptable to BNA and its counsel on or before September __, 2010, in relation to the Borrower (the "Interim DIP Order") which order, inter alia, shall approve the DIP Facility on an interim basis, including, without limitation, the grant of a first priority, perfected lien upon all unencumbered property and the proceeds thereof of the Borrower and a junior, properly perfected lien on any property securing a valid, properly perfected lien on any property held by the Borrower as of the Petition Date, to secure the obligations of the Borrower under the DIP Facility in accordance with the terms hereof, effective immediately upon the granting of the Interim DIP Order, without the need for any further action on the part of BNA, the Borrower or any other person (including, without limitation, the execution or delivery of any further documents or agreements or the recording, filing, indexing, entering or registering of any financing statements or other similar instruments or documents).

2.  The Borrower shall have retained a financial advisor/investment banker, satisfactory to BNA.

3.  The Interim DIP Order shall be in full force and effect and shall not have been reversed, stayed, modified or amended without the express written consent of BNA, and no application or motion shall have been made to the Court for any stay, modification or amendment of the Interim DIP Order and no stay, appeal or leave to appeal with respect to same shall be pending.

4.  No event has occurred and is continuing that constitutes an Event of Default or would constitute an Event of Default, but for the requirement that notice be given or time elapse or both.

Additional Advances

1.  The Court shall have entered a final and nonappealable order, in form and substance acceptable to BNA and its counsel on or before October __, 2010, in relation to the Borrower (the "Final DIP Order") which order, inter alia, shall approve the DIP Facility on an final basis, including, without limitation, the grant of a first priority, perfected lien upon all unencumbered property and the proceeds thereof of the Borrower and a junior, properly perfected lien on any property securing a valid, properly perfected lien on any property held by the Borrower as of the Petition Date, to secure the obligations of the Borrower under the DIP Facility in accordance with the terms hereof, effective immediately upon the granting of the Interim DIP Order, without the need for any further action on the part of BNA, the Borrower or any other person (including, without limitation, the execution or delivery of any further documents or

agreements or the recording, filing, indexing, entering or registering of any financing statements or other similar instruments or documents).

2. All of the funds available under Interim DIP Order shall have been borrowed and used in accordance with the Budget and any variations to which the Borrower and BNA agree in writing .

3. The Final DIP Order shall be in full force and effect and shall not have been reversed, stayed, modified or amended without the express written consent of BNA, and no application or motion shall have been made to the Court for any stay, modification or amendment of the Final DIP Order and no stay, appeal or leave to appeal with respect to same shall be pending.

4. No event has occurred and is continuing that constitutes an Event of Default or would constitute an Event of Default, but for the requirement that notice be given or time elapse or both.

Priority and Liens: As more fully set forth in the Interim DIP Order and Final DIP Order, the Obligations (i) pursuant to section 364(c)(1) of the Bankruptcy Code, shall constitute allowed superpriority administrative expense claims, (ii) pursuant to section 364(c)(2) of the Bankruptcy Code, shall be secured by a first priority, perfected lien on all the Borrower's assets that are not otherwise encumbered by a valid and perfected lien as of the Petition Date, and pursuant to section 364(c)(3) of the Bankruptcy Code, shall be secured by a perfected junior lien upon all of the Borrower's assets that are subject to valid and perfected liens of any party in existence as of the Petition Date, or a valid lien perfected (but not granted) thereafter to the extent permitted by the Bankruptcy Code that is senior to the liens granted to the Lender under the Interim DIP Order and Final DIP Order and (iii) shall be subordinate to the Carve-Out Expenses.

Carve-Out Expenses: As more fully set forth in the Interim DIP Order and Final DIP Order, the liens on and security interests in the Collateral and the superiority administrative expenses claims shall be subordinate to the "Carve-Out Expenses": (i) statutory fees payable to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6); (b) fees payable to the clerk of the Bankruptcy Court; and (c) after the occurrence of a Carve-Out Event, an amount equal to (X) the reasonable and budgeted professional fees and expenses actually incurred in the Chapter 11 Case by any professionals retained under section 327, 363, or 1103(a) of the Bankruptcy Code (the "Permitted Professional Fees") prior to the occurrence of a Carve-Out Event but not paid on or before the date of such Carve-Out Event and (Y) $100,000 for payment of Permitted Professional Fees incurred after the occurrence of a Carve-Out Event, in each case to the extent subsequently allowed by the Bankruptcy Court. Upon the first day on which the Lender is entitled to exercise remedies under the Interim DIP Order and Final DIP Order (the "Carve-Out Event") and provides written notice thereof to Borrower (the "Carve-Out Event Notice"), the right of the Debtor to pay Permitted Professional Fees outside the Carve-Out shall terminate.

3

| | |
|---|---|
| Commitment and Other Fees: | None. |
| Expenses: | The Borrower shall reimburse BNA for the professional fees and expenses incurred by BNA, as Lender, in an amount not to exceed $150,000. |
| Covenants: | The Borrower covenants and agrees with BNA that, unless BNA otherwise consents in writing, so long as any amount payable hereunder is outstanding or the DIP Facility shall remain in place, it shall only use the advances made under the DIP Facility for the purposes set out herein and shall not use such funds to commence any action against BNA or its affiliates. As more fully set forth in the Interim DIP Order and Final DIP Order, the Borrower further covenants and agrees that no Obligation under the DIP Facility shall be subject to setoff or recoupment or any such rights under Bankruptcy Code section 553 or otherwise with respect to any claim the Borrower may have against the Lender arising on or before the Petition Date. |
| Sale of Assets: | Unless otherwise consented to in writing by BNA, the proceeds from any sale of assets, other than sales in the ordinary course of business, shall be first used to reduce any amount outstanding under the DIP Facility, and any such payments shall reduce the aggregate Commitment of BNA on a dollar for dollar basis. |
| Financial Reporting: | Unless otherwise consented to by BNA: |

1. The Borrower shall provide to BNA on Wednesday of each week a list of all planned disbursements for such week.

2. The Borrower shall provide to BNA no later than 3:00 p.m. on Tuesday of each week (each, a "Reporting Date"), (a) a full accounting of all cash receipts and expenditures incurred for the past week commencing the opening of business on the Monday past up through the close of business of such past week, (b) an update on the status of the steps taken with respect to the Sale Process and the formulation of a reorganization plan and (c) an estimate of the funding required for the succeeding 2 weeks.

| | |
|---|---|
| Events of Default: | The occurrence of any one or more of the following events (each such event and the expiry of the cure period, if any, provided in connection therewith, being herein referred to as an "Event of Default") shall constitute a default under this Term Sheet: |

1. The failure by the Borrower to perform or comply with any term, condition, covenant or obligation contained in this Term Sheet, the Interim DIP Order or Final DIP Order, on its part to be performed or complied with where any such failure to perform or comply shall not be remedied within three (3) business days from notice of default.

2. The cessation of the DIP Facility to be in full force and effect or the DIP Facility being declared by the Court to be null and void or the validity or enforceability the DIP Facility being contested by the Borrower or the

4

Borrower denying in writing that it has any further liability or obligation under the DIP Facility or the Lender ceasing to have the benefit of the Liens granted by the Interim DIP Order or Final DIP Order.

3. Except as permitted in the Interim DIP Order or Final DIP Order, the entry of any order of the Court granting a superpriority claim or lien pari passu with or senior to that granted to the Lender hereunder.

4. If, as of any Reporting Date, the Borrower's cumulative cash disbursements with respect to the "Debtor's Professional Fees-Ordinary" from the period from any Petition Date through the end of any calendar month for which fees are sought exceeds 15% from the amount included in the Budget (i.e., exceeds scheduled disbursements by more than 15%).

5. The Borrower fails to make any interest payments due under the Interim DIP Order or Final DIP Order within three (3) business days of when due.

6. The Borrower fails to file a proposed plan of reorganization (as may be amended, the "Reorganization Plan") and disclosure statement with respect thereto (the "Disclosure Statement") on or before October 18, 2010.

7. A Disclosure Statement has not been approved by November 23, 2010.

8. A Reorganization Plan has not been confirmed and become effective by January 15, 2011.

9. The entry of an order converting the Borrower's chapter 11 case to a case under chapter 7 of the Bankruptcy Code, or the Borrower filing a motion or not opposing a motion seeking such relief.

10. The entry of an order dismissing the Borrower's chapter 11 case, or the Borrower filing a motion or not opposing a motion seeking such relief, unless consented to by the Lender.

11. The entry of any order in the Borrower's chapter 11 case or any successor case, which order constitutes the stay, modification, appeal or reversal of this Order or which otherwise affects the effectiveness of this Order.

12. The entry of an order in the Borrower's chapter 11 case appointing any examiner having expanded powers or a trustee to operate all or any part of the Borrower's business.

13. The entry of an order in the Borrower's chapter 11 case granting relief from the automatic stay so as to allow a third party or third parties to proceed against any property, including the Collateral, of the Borrower or to commence or continue any prepetition litigation against the Borrower involving potential liability not covered by insurance, in excess of $50,000 in the aggregate.

14. Any judgment or order as to postpetition liability or debt for the payment of money in excess of $50,000 shall be rendered against the Borrower, and the enforcement thereof shall not have been stayed.

15. Any non-monetary judgment or order with respect to a postpetition event shall be rendered against the Borrower which does or would reasonably be expected to (i) cause a material adverse change in the financial condition, business, prospects, operations or assets of the Borrower or (ii) have a material adverse effect on the rights and remedies of the Lender hereunder, and there shall be a period of ten (10) consecutive days during which a stay of enforcement of such judgment or order, by reason of a pending appeal or otherwise, shall not be in effect.

16. The Interim DIP Order or Final DIP Order being amended or modified without the consent of the Lender.

Governing Law:    Delaware

# EXHIBIT B

(Budget)

To be filed prior to the first day hearing.

.