# **EXHIBIT A**

(DIP Term Sheet)

# BNA Subsidiaries, LLC

## Terms of Debtor-in-Possession Financing

**Borrower:** BNA Subsidiaries, LLC (the "Debtor")

**Lender:** The Bureau of National Affairs, Inc. ("BNA")

**Commitment/ Availability:** The Lender will make loans to the Borrower under a debtor in possession financing facility (the "DIP Facility") in an aggregate amount not to exceed in the aggregate $1.5 million. Upon the entry of an interim order approving the DIP Facility, the Borrower shall be permitted to borrow an amount not to exceed $400,000. Upon entry of a final order approving the DIP Facility, the Borrower may draw on the full amount of $1.5 million subject to the terms and conditions set forth in this Term Sheet and the final order.

**Use of Proceeds:** All advances under the DIP Facility shall be used by the Borrower solely to fund the Borrower's operations in accordance with the budget approved by the Lender (the "Budget"), as such Budget may be modified with the Lender's written consent. Compliance with the Budget will be measured ever week (after the first four weeks of the case) on a trailing four week basis. For the avoidance of doubt, to the extent any funds under the DIP Facility are used by the Borrower to provide transition services to the Lender, such funds shall not constitute borrowings under the DIP Facility. The Lender shall pay the Borrower for transition services on a cost plus basis by the first day of each accounting period and the Borrower and Lender shall reconcile such payments every four weeks.

**Interest:** Interest per annum for DIP Facility will be equal to four percent (4%) over the prevailing 1-month Libor Rate. Interest will be calculated each month on the basis of actual days elapsed and a 360-day year, and will be payable monthly, in arrears.

**Maturity:** The DIP Facility shall be repayable in full on the date (the "Maturity Date") which is the earliest of (a) 150 days from the Petition Date; (b) the effective date of a plan of reorganization; (c) the consummation of a sale of all or substantially all of the assets of the Borrower; (d) the occurrence of an Event of Default (as defined herein); (e) the entry of an order by the United States Bankruptcy Court ("Court") approving an alternative DIP Financing; and (f) such later date as BNA in its sole discretion may agree to in writing with the Borrower.

**Conditions Precedent to Funding:** Availability of the DIP Facility shall be subject to the following conditions precedent, all of which shall be for the benefit of BNA and must be satisfied on occasion of each drawdown under the DIP Facility, unless waived in writing in advance by BNA:

<u>Interim Advances</u>

1. The Court shall have issued an interim order, in form and substance acceptable to BNA and its counsel on or before September __, 2010, in relation to the Borrower (the "Interim DIP Order") which order, <u>inter alia</u>, shall approve the DIP Facility on an interim basis, including, without limitation, the grant of a first priority, perfected lien upon all unencumbered property and the proceeds thereof of the Borrower and a junior, properly perfected lien on any property securing a valid, properly perfected lien on any property held by the Borrower as of the Petition Date, to secure the obligations of the Borrower under the DIP Facility in accordance with the terms hereof, effective immediately upon the granting of the Interim DIP Order, without the need for any further action on the part of BNA, the Borrower or any other person (including, without limitation, the execution or delivery of any further documents or agreements or the recording, filing, indexing, entering or registering of any financing statements or other similar instruments or documents).

2. The Borrower shall have retained a financial advisor/investment banker, satisfactory to BNA.

3. The Interim DIP Order shall be in full force and effect and shall not have been reversed, stayed, modified or amended without the express written consent of BNA, and no application or motion shall have been made to the Court for any stay, modification or amendment of the Interim DIP Order and no stay, appeal or leave to appeal with respect to same shall be pending.

4. No event has occurred and is continuing that constitutes an Event of Default or would constitute an Event of Default, but for the requirement that notice be given or time elapse or both.

<u>Additional Advances</u>

1. The Court shall have entered a final and nonappealable order, in form and substance acceptable to BNA and its counsel on or before October __, 2010, in relation to the Borrower (the "Final DIP Order") which order, <u>inter alia</u>, shall approve the DIP Facility on an final basis, including, without limitation, the grant of a first priority, perfected lien upon all unencumbered property and the proceeds thereof of the Borrower and a junior, properly perfected lien on any property securing a valid, properly perfected lien on any property held by the Borrower as of the Petition Date, to secure the obligations of the Borrower under the DIP Facility in accordance with the terms hereof, effective immediately upon the granting of the Interim DIP Order, without the need for any further action on the part of BNA, the Borrower or any other person (including, without limitation, the execution or delivery of any further documents or

agreements or the recording, filing, indexing, entering or registering of any financing statements or other similar instruments or documents).

2. All of the funds available under Interim DIP Order shall have been borrowed and used in accordance with the Budget and any variations to which the Borrower and BNA agree in writing.

3. The Final DIP Order shall be in full force and effect and shall not have been reversed, stayed, modified or amended without the express written consent of BNA, and no application or motion shall have been made to the Court for any stay, modification or amendment of the Final DIP Order and no stay, appeal or leave to appeal with respect to same shall be pending.

4. No event has occurred and is continuing that constitutes an Event of Default or would constitute an Event of Default, but for the requirement that notice be given or time elapse or both.

Priority and Liens: As more fully set forth in the Interim DIP Order and Final DIP Order, the Obligations (i) pursuant to section 364(c)(1) of the Bankruptcy Code, shall constitute allowed superpriority administrative expense claims, (ii) pursuant to section 364(c)(2) of the Bankruptcy Code, shall be secured by a first priority, perfected lien on all the Borrower's assets that are not otherwise encumbered by a valid and perfected lien as of the Petition Date, and pursuant to section 364(c)(3) of the Bankruptcy Code, shall be secured by a perfected junior lien upon all of the Borrower's assets that are subject to valid and perfected liens of any party in existence as of the Petition Date, or a valid lien perfected (but not granted) thereafter to the extent permitted by the Bankruptcy Code that is senior to the liens granted to the Lender under the Interim DIP Order and Final DIP Order and (iii) shall be subordinate to the Carve-Out Expenses.

Carve-Out Expenses: As more fully set forth in the Interim DIP Order and Final DIP Order, the liens on and security interests in the Collateral and the superiority administrative expenses claims shall be subordinate to the "Carve-Out Expenses": (i) statutory fees payable to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6); (b) fees payable to the clerk of the Bankruptcy Court; and (c) after the occurrence of a Carve-Out Event, an amount equal to (X) the reasonable and budgeted professional fees and expenses actually incurred in the Chapter 11 Case by any professionals retained under section 327, 363, or 1103(a) of the Bankruptcy Code (the "Permitted Professional Fees") prior to the occurrence of a Carve-Out Event but not paid on or before the date of such Carve-Out Event and (Y) $100,000 for payment of Permitted Professional Fees incurred after the occurrence of a Carve-Out Event, in each case to the extent subsequently allowed by the Bankruptcy Court. Upon the first day on which the Lender is entitled to exercise remedies under the Interim DIP Order and Final DIP Order (the "Carve-Out Event") and provides written notice thereof to Borrower (the "Carve-Out Event Notice"), the right of the Debtor to pay Permitted Professional Fees outside the Carve-Out shall terminate.

3

| | |
|---|---|
| Commitment and Other Fees: | None. |
| Expenses: | The Borrower shall reimburse BNA for the professional fees and expenses incurred by BNA, as Lender, in an amount not to exceed $150,000. |
| Covenants: | The Borrower covenants and agrees with BNA that, unless BNA otherwise consents in writing, so long as any amount payable hereunder is outstanding or the DIP Facility shall remain in place, it shall only use the advances made under the DIP Facility for the purposes set out herein and shall not use such funds to commence any action against BNA or its affiliates. As more fully set forth in the Interim DIP Order and Final DIP Order, the Borrower further covenants and agrees that no Obligation under the DIP Facility shall be subject to setoff or recoupment or any such rights under Bankruptcy Code section 553 or otherwise with respect to any claim the Borrower may have against the Lender arising on or before the Petition Date. |
| Sale of Assets: | Unless otherwise consented to in writing by BNA, the proceeds from any sale of assets, other than sales in the ordinary course of business, shall be first used to reduce any amount outstanding under the DIP Facility, and any such payments shall reduce the aggregate Commitment of BNA on a dollar for dollar basis. |
| Financial Reporting: | Unless otherwise consented to by BNA: |

1. The Borrower shall provide to BNA on Wednesday of each week a list of all planned disbursements for such week.

2. The Borrower shall provide to BNA no later than 3:00 p.m. on Tuesday of each week (each, a "Reporting Date"), (a) a full accounting of all cash receipts and expenditures incurred for the past week commencing the opening of business on the Monday past up through the close of business of such past week, (b) an update on the status of the steps taken with respect to the Sale Process and the formulation of a reorganization plan and (c) an estimate of the funding required for the succeeding 2 weeks.

Events of Default: The occurrence of any one or more of the following events (each such event and the expiry of the cure period, if any, provided in connection therewith, being herein referred to as an "Event of Default") shall constitute a default under this Term Sheet:

1. The failure by the Borrower to perform or comply with any term, condition, covenant or obligation contained in this Term Sheet, the Interim DIP Order or Final DIP Order, on its part to be performed or complied with where any such failure to perform or comply shall not be remedied within three (3) business days from notice of default.

2. The cessation of the DIP Facility to be in full force and effect or the DIP Facility being declared by the Court to be null and void or the validity or enforceability the DIP Facility being contested by the Borrower or the

4

Borrower denying in writing that it has any further liability or obligation under the DIP Facility or the Lender ceasing to have the benefit of the Liens granted by the Interim DIP Order or Final DIP Order.

3. Except as permitted in the Interim DIP Order or Final DIP Order, the entry of any order of the Court granting a superpriority claim or lien pari passu with or senior to that granted to the Lender hereunder.

4. If, as of any Reporting Date, the Borrower's cumulative cash disbursements with respect to the "Debtor's Professional Fees-Ordinary" from the period from the Petition Date through the end of any calendar month for which fees are sought exceeds 15% from the amount included in the Budget (i.e., exceeds scheduled disbursements by more than 15%).

5. The Borrower fails to make any interest payments due under the Interim DIP Order or Final DIP Order within three (3) business days of when due.

6. The Borrower fails to file a proposed plan of reorganization (as may be amended, the "Reorganization Plan") and disclosure statement with respect thereto (the "Disclosure Statement") on or before October 18, 2010.

7. A Disclosure Statement has not been approved by November 23, 2010.

8. A Reorganization Plan has not been confirmed and become effective by January 15, 2011.

9. The entry of an order converting the Borrower's chapter 11 case to a case under chapter 7 of the Bankruptcy Code, or the Borrower filing a motion or not opposing a motion seeking such relief.

10. The entry of an order dismissing the Borrower's chapter 11 case, or the Borrower filing a motion or not opposing a motion seeking such relief, unless consented to by the Lender.

11. The entry of any order in the Borrower's chapter 11 case or any successor case, which order constitutes the stay, modification, appeal or reversal of this Order or which otherwise affects the effectiveness of this Order.

12. The entry of an order in the Borrower's chapter 11 case appointing any examiner having expanded powers or a trustee to operate all or any part of the Borrower's business.

13. The entry of an order in the Borrower's chapter 11 case granting relief from the automatic stay so as to allow a third party or third parties to proceed against any property, including the Collateral, of the Borrower or to commence or continue any prepetition litigation against the Borrower involving potential liability not covered by insurance, in excess of $50,000 in the aggregate.

5

14. Any judgment or order as to postpetition liability or debt for the payment of money in excess of $50,000 shall be rendered against the Borrower, and the enforcement thereof shall not have been stayed.

15. Any non-monetary judgment or order with respect to a postpetition event shall be rendered against the Borrower which does or would reasonably be expected to (i) cause a material adverse change in the financial condition, business, prospects, operations or assets of the Borrower or (ii) have a material adverse effect on the rights and remedies of the Lender hereunder, and there shall be a period of ten (10) consecutive days during which a stay of enforcement of such judgment or order, by reason of a pending appeal or otherwise, shall not be in effect.

16. The Interim DIP Order or Final DIP Order being amended or modified without the consent of the Lender.

Governing Law:          Delaware